UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

_____ )
BLUE SKY TOWERS II, LLC                )
d/b/a BSTMA II, LLC                    )
                                       )
            Plaintiff                  )
                                       )
v.                                     )
                                       )
TOWN OF MASHPEE,                       )
TOWN OF MASHPEE                        )
PLANNING BOARD, and                    )
MARY WAYGAN, JOSEPH CUMMINGS,          )
JOSEPH CALLAHAN, JOHN PHELAN           )
and DENNIS BALZARINI,                  )
as they are members of the PLANNING    )
BOARD OF THE TOWN OF MASHPEE,          )
                                       )
            Defendants.                )
_____ )

## COMPLAINT

Blue Sky Towers II, LLC d/b/a BSTMA II, LLC ("Blue Sky") hereto brings this complaint under Section 704 of the Telecommunications Act of 1996, as codified at 47 U.S.C. § 332(c)(7) ("TCA"), for declaratory judgment and injunctive relief from the denial of the Town of Mashpee Planning Board's ("Board") denial of Blue Sky's application for a 150-foot monopole telecommunications facility at 101 Red Brook Road, Mashpee, Massachusetts ("Proposed Site"). Blue Sky seeks expedited hearing and relief under the TCA where the Board's denial prohibits or has the effect of prohibiting the provision of wireless services within a significant gap in wireless coverage for two (2) national wireless service providers and was wholly unsupported by substantial evidence in the administrative record.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 47 U.S.C. § 332(c)(7)(B)(v), as Blue Sky has been aggrieved and adversely affected by the Board's denial of its application, and 28 U.S.C. § 1331 where this action presents a federal question that arises under the laws of the United States, more specifically, the TCA.

2. An expedited hearing is required pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

3. This Court is a proper venue for these claims pursuant to 28 U.S.C. § 1391 where a substantial part of the events giving rise to the claims presented herein occurred within this judicial district.

## PARTIES

4. The Plaintiff, Blue Sky Towers II, LLC d/b/a BSTMA II, LLC, is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal offices located at 352 Park Street, Suite 106, North Reading, MA 01864.

5. Defendant Town of Mashpee has an address of 16 Great Neck Road North, Mashpee, Massachusetts 02649.

6. Defendant Town of Mashpee Planning Board has an address of 16 Great Neck Road North, Mashpee, Massachusetts 02649.

7. Defendant Mary Waygan is the Chairman of the Board and resident of Mashpee, Massachusetts.

8. Defendant Joseph Cummings is the Vice Chairman of the Board and a resident of Mashpee, Massachusetts.

9. Defendant Joseph Callahan is the Clerk of the Board and a resident of Mashpee, Massachusetts.

10. Defendant Joseph Phelan is a Member of the Board and a resident of Mashpee, Massachusetts.

11. Defendant Dennis Balzarini is a Member of the Board and a resident of Mashpee, Massachusetts.

## FACTS

*Proposed Site Description and History*

12. In May of 2017, the Town of Mashpee issued a Request for Proposals ("RFP") for the lease of land to install a personal wireless service facility on the property located at 101 Red Brook Road,

2

Mashpee, MA ("Proposed Site"), the location of the existing Mashpee Fire Station #2, of which Blue Sky was the successful bidder.

13. In October of 2017, Blue Sky and the Town of Mashpee entered into a Lease Agreement, ("Lease") for approximately 100' x 100' square feet of ground space for the location of the Proposed Site with access and utility service over the property.  A Memorandum of Lease was recorded at the Barnstable County Registry of Deeds in Book 31843, Page 324.

14. Pursuant to the Lease, Blue Sky has the right to permit, construct and operate a personal wireless service facility on the Proposed Site, with access and utility rights over the property to the Proposed Site.

15. The Proposed Site is located in a wooded area to the east of the existing Mashpee Fire Station #2 building on an approximate 37-acre parcel.  The property is bounded to the north, east and south by forested areas and to the west by the Mashpee Fire Station.  See **Exhibit 1 – Site Plan.**

16. The Proposed Site includes a 150-foot monopole type telecommunications tower within the 100' x 100' lease area, with 70' x 70' of the lease area contained within a fenced compound.

17. Access to the Proposed Site will be from the public right of way (Red Brook Road) over an existing access and parking area to a 20' wide access and utility easement and through 6-foot-wide double gates into the facility.

18. The Proposed Site is located on municipal land, which allows the Town of Mashpee greater control over the site.

19. The Proposed Site is designed to accommodate up to a total of four (4) wireless service carriers' antennas and equipment, in addition to the Town of Mashpee's public safety antennas (for police, fire and emergency medical services).

20. Blue Sky has signed Letters of Intent ("LOI") with two personal wireless service providers licensed by the Federal Communications Commission ("FCC"), Cellco Partnership d/b/a Verizon Wireless

("Verizon Wireless") and T-Mobile Northeast, LLC ("T-Mobile"), to operate wireless telecommunications networks in the Commonwealth of Massachusetts and the Town of Mashpee.

21. Under their FCC licenses, Verizon Wireless and T-Mobile are mandated to provide reliable wireless service to its customers.

22. Verizon Wireless proposes to mount 12 panel antennas (4 per sector) at a centerline elevation of 146' above ground level. 12 Remote Radio Heads (RRH) with accessory junction boxes and surge suppressors are proposed to be mounted alongside the antennas. Verizon Wireless will encompass a 12' x 20' equipment lease area within the 70' x 70' fenced compound, with telco/power/fiber connections, telecommunication cabinets and a back-up power propane generator all on concrete pads within the proposed fenced compound.

23. T-Mobile is proposing to mount 12 panel antennas (3 per sector) and 12 RRH's at a centerline of 136' feet above ground level. T-Mobile will encompass a 10' x 20' lease area for its ground equipment and a 10' x 10' area for its generator.

24. As part of the Lease Agreement, Blue Sky will allow the Town of Mashpee to locate its EMS antennas free of charge at 100' above ground level.

25. Verizon Wireless and T-Mobile have significant gaps in wireless service in southern portions of Mashpee.

26. Without the development of the Proposed Site, Verizon Wireless and T-Mobile cannot provide reliable service to the southern portions of Mashpee.

27. As shown on the Zoning Drawings, the tower meets all fall zone and set back requirements of the Cape Cod Commission ("Commission") and under the Town of Mashpee's Bylaws.

28. Visibility of the Proposed Site from neighboring areas will be mitigated to the greatest extent possible, utilizing a monopole-type tower which maintains a narrow profile and will be manufactured in silver/gray to blend with the sky.

29. The FAA determined that no lighting will be necessary for the Proposed Site.

30. As determined by the National Environmental Policy Act ("NEPA") Report, the proposed personal wireless service facility at this location should not adversely impact designated wilderness areas, designated wildlife preserves, threatened or endangered species or critical habitats, historic places, Indian religious sites, floodplain, wetlands, or aviation standards.

31. To ensure compliance with the local, regional and state standards for sound, Blue Sky retained Modeling Specialties to conduct a Sound Impact Assessment Study at the Proposed Site.

32. In its report, Modeling Specialties confirmed that at full-build out of the Proposed Site, the conservative estimates of sound remain in compliance with all relevant regulations for sound.

33. The Commission confirmed Modeling Specialties findings.

34. To determine compliance with all relevant radio frequency emissions standards, Blue Sky retained Dr. Donald Haes to prepare a cumulative radio frequency exposure report for the Proposed Site.

35. Dr. Haes' concluded that the proposed personal wireless service facility, including the antennas and equipment of Verizon Wireless, T-Mobile, and the Town's EMS equipment, will comply with all regulatory guidelines for radio frequency exposure, including relevant sections of the Massachusetts Department of Public Health regulations and the FCC's guidelines for RF exposure.

36. The Commission confirmed Dr. Haes findings.

37. The Board did not retain an expert in the field of radio frequency.

38. To ensure that the Proposed Site would not adversely affect property values, Blue Sky retained the services of FairMarket Advisors, LLC and Mark Correnti, Massachusetts Certified Residential Appraiser.

39. FairMarket Advisors, LLC's report and supplemental report concludes that the Proposed Site will not adversely affect property values.

40. The Commission concluded that the Proposed Site would not adversely affect property values.

41. The Board did not retain an expert or engage the services of an appraiser.

42. As determined by the Commission, the Proposed Site minimizes adverse impacts on the development of land by using municipal land efficiently, protecting sensitive resources, minimizing the footprint and land disturbance, and maximizing co-location.

43. Blue Sky spared no expense and did not overlook a single potential impact upon neighboring properties and the community in designing the Proposed Site.

44. The Proposed Site is a low intensity land use compatible with the current use of the property and development patterns in the area, including the Mashpee Fire Station.

45. Once construction is complete, the Proposed Site will be mostly a passive use and the need to access the site will be limited.

46. On April 14, 2018, after publication in the Cape Cod Times on March 31, 2018 and April 7, 2018, the Applicant conducted a balloon test on the property.  Two balloons were flown, one at approximately 150 feet above ground level and the other at 125 feet above ground level to simulate the height of the proposed tower.  Photographs were taken of the balloons from various vantage points surrounding the proposed tower and photographic simulations of the proposed tower and antennas were produced.

47. The photo locations include locations requested by the Town and the Cape Cod Commission and a number of historic structures and properties within a one-mile radius.

*Need for Coverage and Capacity Relief in the Town of Mashpee*

48. Verizon Wireless and T-Mobile are Federal Communications Commission ("FCC") licensed providers of "commercial mobile service" which is one of the three categories of "personal wireless service" under 47 U.S.C. § 332(d)(1) which is protected by the federal preemptions in 47 U.S.C. § 332(c)(7)(B).

49. There has been and continues to be a significant gap in wireless coverage in the southern portions of the Town of Mashpee along Red Brook Road, Great Oak Road, Great Neck Road South, Monomoscoy Road, Rock Landing Road, Popponesset Island Road, and the surrounding

neighborhoods, including the communities of New Seabury, Seabrook, Monomoscoy Island and Popponesset Island (the "Coverage Gap").

50. Verizon Wireless and T-Mobile are experiencing increased network capacity in this area of south Mashpee and as a result, the existing personal wireless service facilities are burdened, calling for a new facility to off-load capacity.

51. The existence of the Coverage Gap and capacity issues led Verizon Wireless and T-Mobile to enter into agreements with Blue Sky to co-locate on the Proposed Site.

52. The Coverage Gap and capacity needs have been documented and established by Blue Sky, Verizon Wireless and T-Mobile through multiple scientific, industry standard methods.

53. Verizon Wireless and T-Mobile each independently conducted computer-based Radio Frequency Propagation Studies that showed a lack of coverage for this area.

54. These studies consider coverage and capacity needs from existing wireless facilities in this area and show predicted coverage with and without the proposed 150-foot monopole.

55. These studies show a significant Coverage Gap and capacity need for both carriers in this area.

56. The Coverage Gap was further demonstrated through "drive-test data" provided for both Verizon Wireless and T-Mobile, which collects and measures actual radio frequency signal strength for each carrier as a vehicle travels along specific roads.

57. The drive test data confirmed that neither Verizon Wireless nor T-Mobile has adequate signal strength in the area of the Coverage Gap.

58. The Coverage Gap was also fully reviewed and confirmed by the Cape Cod Commission's independent wireless expert, Isotrope, LLC.

59. Isotrope, LLC reviewed all of the studies and drive-test data together with additional data that it requested regarding location, height and the interrelationship with existing sites and the Commission confirmed the need for the Proposed Site at the requested height and location.

60. The Coverage Gap is physically large and affects a substantial number of users.

61. Public safety officials from the Town of Mashpee reiterated throughout the permitting process that improved service in the area of the Proposed Site is critical to the provision of emergency services in Mashpee and is preventing them from adequately providing life-saving services in times of medical emergencies and natural disasters.

62. The Coverage Gap can only be remedied by a new personal wireless service facility at the Proposed Site as confirmed by the Commission's expert that there are no existing structures upon which a new personal wireless service facility can be located.

*Alternative Site Analysis*

63. Prior to submitting its application to the Board, Verizon Wireless and T-Mobile had identified this area of Mashpee as a location where there was a significant Coverage Gap in their wireless networks.

64. Verizon Wireless had unsuccessfully attempted to secure a site in the area of the Proposed Site years before the Town issued the RFP.

65. Prior to submitting its application for the Proposed Site to the Board, Blue Sky, in consultation with Verizon Wireless and T-Mobile, undertook an extensive search of properties in the area that could provide service to the Coverage Gap.

66. The search area is established by the size and location of the Coverage Gap and then the surrounding area is examined to determine where a site can be located to close the Coverage Gap.

67. Once this search area was defined, Blue Sky searched within the area for existing buildings, towers and other tall structures of sufficient height which might meet the objectives.

68. All properties within the search area were evaluated for location, size, frontage, view shed, restrictive covenants, access, topography, driveway and utility construction, setbacks and other design criteria related to telecommunications site development.

69. At the outset, hundreds of parcels were identified within the search ring and summarily eliminated because of the size of the parcel, the inability to meet setbacks or other obvious impediments.

70. Once it was determined that there are no tall existing structures available within the area, Blue Sky reviewed suitable raw land sites on which to place a personal wireless service facility to remedy the Coverage Gap and capacity needs.

71. After its initial analysis, approximately twenty-five potentially viable sites remained and each site was extensively reviewed as a potential alternative and subsequently dismissed for reasons such as access issues, restrictive covenants, unavailability for lease or sale, parcel size, wetlands, lacking adequate screening.

72. Many of these sites would also have a greater impact on neighboring residences.

73. After a thorough analysis of all existing structures and raw land, the Applicant identified the proposed site, the Town's preferred location for a new wireless facility, as the only feasible location to close this significant Coverage Gap for Verizon Wireless and T-Mobile while satisfying setback requirements and other requirements of the Town's Bylaws and Commission regulations.

74. Blue Sky, Verizon Wireless and T-Mobile then determined, and the Cape Cod Commission and the Mashpee Zoning Board of Appeals agreed, that the proposed tower was in the only location and the minimal height necessary to remedy the Coverage Gap and capacity issues in southern Mashpee.

75. The Board did not propose a single viable alternative or identify any manner in which Blue Sky's search was flawed.

76. Members of the public proposed several alternatives which Blue Sky reviewed.

77. Blue Sky provided definitive reasons why each site raised by a member of the public was not a viable alternative.

*Proceedings before the Cape Cod Commission*

78. The Proposed Site is located in the R-3 Zoning District. Pursuant to the Town of Mashpee Zoning Ordinance, §174-25(H)(9), a personal wireless service facility is allowed in the R-3 Zoning District by special permit from the Planning Board.

79. On May 04, 2018, Blue Sky filed an application for a special permit for a Personal Wireless Service Facility with the Mashpee Planning Board.

80. The project qualifies as a mandatory Development of Regional Impact ("DRI") under Section 3(i)(I) of the Cape Cod Commission's Enabling Regulations.

81. After a detailed technical review process with the Commission, the Commission approved the Proposed Site on October 18, 2018.

82. The DRI hearing period for the project was opened by a Commission hearing officer on August 20, 2018.

83. A Commission subcommittee held public hearings on the project on September 5, 2018 at the Mashpee Public Library and on September 17, 2018 at Commission offices.

84. Commission staff prepared a staff report, dated August 29, 2018, for the September 5, 2018 hearing.

85. The subcommittee met on October 9, 2018 at Commission offices to review the draft DRI decision and after review, voted to recommend that the Commission approve the project subject to the conditions in said decision.

86. The full Commission held a hearing on the project October 18, 2018 where it considered the subcommittee's recommendations, including the draft written DRI decision for the Project and approved the Proposed Site.

87. The Town Manager, Fire Chief, and other Town public safety and other officials provided oral testimony to the Commission about the long-standing identified need for better wireless coverage for 911 calls in the southern portion of Mashpee, and the Proposed Site's ability to provide for wireless coverage more generally in south Mashpee, how this identified need led to the Town's issuance of an RFP for wireless facilities at the Proposed Site, and how reliable coverage is critical to the provision of emergency services in south Mashpee.

88. The Cape Cod Commission requested third-party, independent technical review of the Project from its contracted wireless communications technical consultant, David Maxson, principal of lsotrope, LLC.

89. The Cape Cod Commission found, among other things, that "[w]ithout development of the Project, the Carriers cannot provide reliable service to the southern portions of the Town of Mashpee pursuant to the Telecommunications Act of 1996 and their licenses issued by the FCC."

90. The Commission found that Blue Sky has provided appropriate and sufficient documentation and analyses to evidence the Carriers' problems in wireless coverage and thus the need and demand for the Proposed Site, including documentation consistent with guidance set out in the Commission's Wireless Technical Bulletin.

91. The Commission found that Blue Sky provided sufficient documentation, reviewed by their retained wireless expert, of the deficiencies in wireless coverage for both Verizon Wireless and T-Mobile and that there are no existing structures and no feasible raw land sites which the carriers could provide coverage and capacity effectiveness comparable to what is being proposed.

92. The Commission found, in consultation with their wireless expert and based upon the testimony and documentation provided by the Blue Sky's two Radio Frequency Engineers, that a distributed antenna system ("DAS") or "small cell" system is not feasible to replace the proposed tower.

93. Further, the Commission found that the information provided by Blue Sky confirmed the need for the facility at the proposed height to address coverage and capacity issues in this area of Mashpee.

94. The Commission found that the facility is appropriately located on municipal land and that there is sufficient existing forested area on the property to substantially obscure and limit views and to blend in with the natural environment to the greatest extent possible.

95. The Commission's extensive review by its Subcommittee, professional staff, retained wireless consultant and the full Commission confirmed that the proposal in its location and at the proposed

height of 150 feet, is necessary to remedy coverage deficiencies, capacity issues, and bring new

and improved service to this area of Mashpee and that there are no alternatives to the proposal.

96. The Commission approved the Proposed Site on October 18, 2018 and recorded its decision in the

Barnstable County Registry of Deeds in Book 31689, Page 331.

*Proceedings before the Mashpee Zoning Board of Appeals and Planning Board*

97. Originally, the Mashpee Town Planner, the Commission and Blue Sky believed that the Proposed

Site was within the Mashpee Wireless Overlay District.

98. Within the Mashpee Wireless Overlay District, the Planning Board may waive the height

requirements for a monopole up to 200 feet.

99. After archival research and review, the Town of Mashpee uncovered information that confirmed

that the Proposed Site was outside of the Mashpee Wireless Overlay District.

100.    Article 14 of the 2018 October Town Meeting Warrant sought to amend the Wireless

Facility Overlay District.

101.    If the article had passed the Proposed Site would have been included in the Wireless

Facility Overlay District.

102.    The article did not pass.

103.    However, a "no" vote was in no way fatal to the Application. The only impact of the

2018 Town Meeting vote was that the Applicant was required to obtain a variance for height from

the Zoning Board of Appeals because it is outside of the Wireless Overlay District.

104.    Section 174-45.3(E)(1) of the Mashpee Zoning Bylaws states that regardless of the type

of mount, personal wireless service facilities shall be no higher than ten (10') feet above the

average height of buildings within three hundred (300') feet of the proposed facility.

105.    In addition, the height of a personal wireless service facility shall not exceed by more

than ten (10') feet the height limits of the zoning district in which the facility is proposed to be

located, unless the facility is completely camouflaged such as within a flagpole, steeple, chimney, or similar structure. Section

106.      174-45.3(E)(2) states that ground-mounted personal wireless service facilities shall not project higher than ten (10') feet above the average building height or, if there are no buildings within three hundred (300') feet, these facilities shall not project higher than ten (10') feet above the average tree canopy height, measured from ground level (AGL).

107.      On January 10, 2019, Blue Sky requested a variance from the Mashpee Zoning Board of Appeals, seeking relief from the height requirements for Personal Wireless Service Facilities.

108.      The Mashpee Zoning Board of Appeals granted the variance on February 13, 2019 finding that there is a known condition of a gap in cellphone coverage in the area of the Proposed Site and that the proposed height and location will significantly close this gap.

109.      The Mashpee Zoning Board of Appeals concluded that there is a need for the Proposed Site to provide safety for its citizens.

110.      The Mashpee Zoning Board of Appeals concluded that the proposed height is not excessive but is high enough to address the topographical impediments to provide the necessary coverage.

111.      The variance was appealed by a group of residents in Barnstable Superior Court (No. 1972CV130) on March 19, 2019, said appeal pending.

112.      Due to Town elections during the proceedings before the Cape Cod Commission and the Zoning Board of Appeals, the Planning Board, a five-member Board, retained only three of the original members that sat on Blue Sky's application. As such, in order to preserve its due process rights and to be heard by a full five-member Board, Blue Sky withdrew its application, without prejudice, on June 19, 2019, and refiled its application on August 02, 2019.

113.      The following items were included with Blue Sky's application to the Board:

a) Letter of Authorization to file from the property owner
b) Zoning Drawings
c) Photographic Simulations
d) Equipment Specifications

e) Final NEPA Summary Report
f) DRI Decision from the Cape Cod Commission
g) Variance Decision
h) Verizon Wireless' FCC Licenses
i) Verizon Wireless' Radio Frequency Report, Coverage Maps and Drive-Test Data
j) Letter from Keith Vellante, Radio Frequency Engineer on behalf of Verizon Wireless, on Feasibility of Alternative Technology
k) T-Mobile's FCC Licenses
l) T-Mobile's Statement of Need, Existing and Proposed Coverage Maps, and Drive-Test Data
m) T-Mobile's Supplemental Radio Frequency Affidavit
n) Alternative Site Analysis
o) FairMarket Advisors Property Values Study
p) FAA Determination of No Hazard
q) Sound Impact Assessment Study
r) Radio Frequency Emissions Compliance Report

114.      The Board held hearings on the Proposed Site on August 16, 2019 and August 23, 2019.

115.      Section 174-45.3 of the Mashpee Zoning Bylaws regulates personal wireless service facilities in the Town of Mashpee.

116.      During the course of the proceedings before the Board, Blue Sky, Verizon Wireless and T-Mobile provided extensive expert testimony to corroborate and support its filings.

117.      Keith Vellante, Radio Frequency Engineer from C Squared Systems on behalf of Verizon Wireless, and Richard Kariuki, Radio Frequency Engineer from T-Mobile, testified concerning a number of issues including Verizon Wireless' and T-Mobile's significant coverage gap at this location in south Mashpee, Verizon Wireless and T-Mobile's capacity issues in this area in south Mashpee, how the site is an effective solution for the coverage and capacity problems at this location, propagation studies, drive test data, alternative technology, height of the proposed tower, size and extent of the coverage gap, alternative sites, and affected users.

118.      Jesse Moreno, project engineer from ProTerra Design Group, testified concerning the engineering of the site and adequately addressed all issues and questions raised by the Town's engineer.

119.      Mark Correnti, Certified Appraiser from FairMarket Advisors, LLC, discussed the methodology of assessing a personal wireless service facility's impact on residences, and discussed his findings that the Proposed Site in Mashpee will not negatively impact nearby property values.

120.    Mr. Correnti also refuted news articles submitted by the public concerning the impact of a cell tower on property values.

121.    Counsel for Blue Sky provided information on how the Proposed Site meets the requirements of the Town's Bylaws, the Commission and the TCA.

122.    During the course of the proceedings before the Board, Blue Sky submitted a supplemental legal memorandum to the Board addressing comments from the Board on the appropriate zoning relief for the Proposed Site, the Middle Class Tax Relief and Job Creation Act of 2012, the coverage gap and required evidence, alternative site analysis, and specifically addressed one particular alternative questioned by a local resident, and aesthetic impacts.

123.    Blue Sky also provided a complete copy of the NEPA to the Board at their request.

124.    Through its extensive submissions and testimony, Blue Sky established that it had satisfied all of the Bylaw criteria, Commission criteria, and criteria under the TCA for the requested special permit.

125.    Paragraph A under Section 174-45.3 states that in accordance with the requirements of 47 U.S.C. 332(c)(7)(B), and until these requirements are modified, amended or repealed, in regulating the placement, construction and modification of personal wireless service facilities, the administration of this bylaw shall not be undertaken in a manner which unreasonably discriminates among providers of functionally equivalent services or prohibits, or has the effect of prohibiting, the provision of personal wireless services.

126.    Blue Sky conclusively established that there is a significant gap in wireless coverage for two national wireless providers in the area of the Proposed Site, that the Proposed Site is the minimal height necessary and the only feasible location to place it.

127.    Blue Sky conclusively established that there are network capacity issues for two national wireless providers in the area of the Proposed Site, that the Proposed Site is critical to rectifying those capacity issues.

128.     The Board did not retain an expert to review Blue Sky's technical data on any aspect of its application and did not otherwise provide any data to refute the technical reports and analysis provided by Blue Sky and its experts which were reviewed and confirmed by the Commission and its retained expert.

129.     Despite the abundant evidence submitted by Blue Sky and its team of experts to substantiate a significant gap in wireless coverage and network capacity issues for two national wireless service providers and the lack of any feasible alternatives to remedy those coverage gaps and network capacity issues, on October 16, 2019, the Board voted to deny Blue Sky's application for a special permit with two in favor and three opposed.  See **Exhibit 2 – Decision.**

130.     The denial states that the proposed monopole would inflict the precise adverse impacts that provisions of the Mashpee Zoning Bylaws were prevented to enact but fails to cite any evidence of the same and ignores the data provided by Blue Sky altogether.

131.     The denial states that the Proposed Site will inflict "dramatic and wholly unnecessary adverse impacts upon the aesthetics and character of neighboring homes" ostensibly ignoring the detailed findings of the Commission and Blue Sky's experts.

132.     The denial states that the Proposed Site will inflict "substantial and wholly unnecessary losses in the values of adjacent and nearby residential property values" ostensibly ignoring the detailed findings of the Commission and Blue Sky's experts.

133.     The denial states that Blue Sky has "failed to demonstrate that less intrusive and more compliant alternatives are not available" blatantly ignoring the extensive alternative site analysis provided to the Board, blatantly ignoring the oral and written testimony of the radio frequency engineers on alternative technology, and blatantly ignoring the Commission's findings.

134.     The denial states that "it is unreasonable for the applicant to reject and defeat less intrusive and more compliant alternatives due to the voluntary response to the RFP and execution of the lease with the Town of Mashpee."

135.     Blue Sky has never maintained, defended, or submitted that an alternative was rejected as a result of the existence of the RFP or lease with the Town.

136.     The denial states that the Town of Mashpee Zoning Bylaws do not allow the Proposed Site at 101 Red Brook Road as the property is outside of the Wireless Facility Overlay District ostensibly ignoring the Commission's findings and their own Bylaws which allows personal wireless service facilities in the R-3 Zoning District.

<u>COUNT I</u>
**Violation of 47 U.S.C. §332(c)(7)(B)(iii)**
**Failure to Support the Denial with Substantial Evidence in the Written Record**

137.     Blue Sky repeats and realleges paragraphs 1 through 136 as if set forth fully herein.

138.     Pursuant to the TCA, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

139.     The Board's decision is not supported by substantial evidence in the administrative record, in violation of this requirement.

140.     The Board's denial is based upon standards that are not in the Bylaws and are not valid basis for denial.

141.     The Board's denial is based upon purely subjective and vague determinations on impact on property values and aesthetic character, contrary to the expert analysis presented to the Board and the Commission's findings to the contrary.

142.     The Board's denial does not contain any supporting evidence for the assertions that the Proposed Site would result in adverse impacts on aesthetics, character of neighboring homes, or property values but rather makes vague and general statements that such a result will occur.

143.     The Board's denial fails to cite any evidence to support the assertion that Blue Sky failed to meet any applicable criteria under the Bylaws.

144.    The Board's denial fails to cite any evidence to support the assertion that Blue Sky failed to demonstrate that less intrusive and more compliant alternatives are not available and in fact, the Board blatantly ignores the un-refuted evidence examining and ruling out alternatives.

145.    Blue Sky provided the Board with a detailed alternative site analysis and answered all questions from the public concerning specific sites.

146.    The Board falsely states that Blue Sky rejected alternatives due to the fact that this site is a result of an RFP when Blue Sky never maintained such reasoning.

147.    The Board's denial misconstrues the Mashpee Zoning Bylaws by stating that the proposed personal wireless communications facility is not allowed when it is in fact permitted by special permit.

148.    Blue Sky provided an overwhelming quantity of un-refuted evidence presented by a team of experts and reviewed and approved by the Commission's staff, members and expert.

149.    Faced with a plethora of empirical evidence on the existence of the Coverage Gap and capacity needs, the absence of feasible alternatives, and the lack of impact on property values, the three no-voting members of the Board simply ignored it.

150.    Under the substantial evidence test, while not required to credit an applicant's evidence, the Board may not simply ignore the evidence where it is uncontroverted and there must be a valid reason for rejecting it.

151.    In this case, the Mashpee Zoning Bylaws go even further in requiring the Board not take any action that would violate the TCA and effectively prohibit the provision of wireless services.

152.    The Board did not put forth one single valid reason to reject the uncontroverted evidence of the Coverage Gap, lack of alternatives, lack of affect on property values or any other issue.

153.    Rather than rendering a decision on the basis of the application, exhibits, expert testimony and Commission's review, the Board's denial is based upon pressure from the voting public and general hostility to the Proposed Site.

154.    Where the denial lacks substantial evidence, the denial violates the TCA under § 332(c)(7)(B) and must be vacated.

155.    Blue Sky is entitled to judgment ordering the issuance of the special permit necessary for the development of the Proposed Site.

## COUNT II
### Violation of 47 U.S.C. §332(c)(7)(B)(i)(II)
### Prohibition of Wireless Services

156.    Blue Sky repeats and realleges paragraphs 1 through 155 as if set forth fully herein.

157.    The TCA provides in relevant part, that [t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof…shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

158.    An applicant may prove an effective prohibition based upon a single land use decision and a blanket ban is not required under the Bylaws.

159.    To prove an effective prohibition, an applicant must prove that there is a significant gap in wireless services in the area, and that there are no feasible alternatives for providing coverage to the area of the coverage gap.

160.    In this case, Blue Sky has provided propagation studies, drive test data, which has all been reviewed and confirmed by an independent wireless expert retained by the Commission to demonstrate that there is a significant Coverage Gap for two national wireless service providers, Verizon Wireless and T-Mobile.

161.    It is well-established in this Circuit that propagation studies and drive test data are highly probative evidence.

162.    While Blue Sky had the initial burden to prove the absence of feasible alternatives, under binding First Circuit precedent, there are limits on a municipality's ability to insist that Blue Sky keep searching.

163.     In the First Circuit, when a board is confronted with evidence that no alternative site exists, it must come forward with evidence and not vague assertions that either Blue Sky's search was insufficient or with a potential alternative itself.

164.     Blue Sky analyzed hundreds of potential alternative sites, and in some cases, went back and analyzed them again when raised by the public, and provided the Board with a firm analysis of each alternative investigated and why the Proposed Site is the only feasible location.

165.     Faced with this evidence, the Board was required to come forward with evidence that Blue Sky's process was insufficient or with a potential alternative itself.  Instead, the Board makes a blanket statement that Blue Sky has failed to demonstrate that "less intrusive and more compliant alternatives" exist and makes a blanketly false statement that Blue Sky relied upon the RFP and execution of the lease with the Town in lieu of an alternative site analysis.

166.     The Board failed to show how considered sites were improperly rejected.

167.     The denial prohibits or effectively prohibits the provision of wireless services in violation of the TCA for the reasons outlined above.

168.     Blue Sky has suffered and continues to suffer irreparable harm based upon being prohibited from constructing and operating a personal wireless service facility for two national wireless service providers and the Town.

169.     This Honorable Court should declare that the denial violations the prohibition set forth in 47 U.S.C. § 332(c)(7)(B)(i).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Blue Sky Towers II, LLC d/b/a BSTMA II, LLC respectfully requests the following relief:

1.  An expedited review of the matters set forth in this Complaint, as provided by the Telecommunications Act of 1996, Pub. L. 104-104, § 704, 110 Stat. 56, codified at 47 U.S.C. § 332(c);

2.  A declaration that the Board's decision is not based upon substantial evidence in a written record under 47 U.S.C. § 332(c)(7)(B)(iii);

3.  A declaration that the Board's decision has the effect of prohibiting the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

4.  An order annulling the denial;

5.  An order of mandamus ordering the Board and the Town of Mashpee to grant a special permit and any and all necessary zoning approvals and relief allowing the construction of the Proposed Site;

6.  Award Blue Sky its reasonable attorneys' fees and costs in connection with this action; and

7.  Such further relief as the Court may deem proper and appropriate.

PLAINTIFF
**BLUE SKY TOWERS II, LLC**
**d/b/a BSTMA II, LLC**
By its Attorneys,


/s/ Earl W. Duval
Earl W. Duval (BBO #565909)
eduval@dkt-legal.com

Duval & Klasnick LLC
210 Broadway, Suite 204
Lynnfield, MA 01940
(781) 873-0023

Dated:  November 12, 2019