UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____  )
                                )   Civil Action No. 1:19-cv-12333
BLUE SKY TOWERS II, LLC         )
d/b/a DSTMA II, LLC             )
Plaintiff                       )
                                )
v.                              )
                                )
THE TOWN OF MASHPEE,            )
TOWN OF MASHPEE PLANNING        )
BOARD, and MARY WAYGAN,         )
JOSEPH CUMMINGS, JOSEPH         )
CALLAHAN, JOHN PHELAN, and      )
DENNIS BALZARINI as they are    )
members of the PLANNING BOARD   )
OF THE TOWN OF MASHPEE          )
Defendants                      )
                                )
                                )
_____  )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

### Introduction

On November 13, 2019, the Plaintiff Blue Sky Towers II, LLC ("Blue Sky") filed this action purporting to challenge the Mashpee Planning Board's denial of a special permit which was necessary to allow Blue Sky to construct a cellular tower on land owned by the Defendant Town of Mashpee ("Town"). Rather, than actually being a legitimate lawsuit to overturn a local decision, this lawsuit was nothing more than collusive action between the Town and Blue Sky to trick the federal district into issuing a judgment that the Town and Blue Sky would then use as a means to

1

attempt to end the Intervenors'[1] state court lawsuit challenging a variance issued by the Mashpee Zoning Board of Appeals ("ZBA") under the Massachusetts Zoning Act. As such, the Massachusetts District Court should allow the Intervenors to intervene in this proceeding so that they may either appeal the decision and/or move to amend the judgment entered by this Court to clearly state that their state court action regarding the variance issued by the ZBA was not rendered moot by the judgment.

## Summary

The Court should allow the Intervenors to intervene in the instant matter as they are afforded the opportunity to intervene as a matter of right, given that the disposition of this case will impair or impede the Intervenors' ability to protect their interests unless they are adequately represented in connection with the instant matter. In particular, the Plaintiff and Defendants filed this collusive lawsuit which they immediately settled for the purpose of obtaining a federal judgment which the Plaintiff claims preempted and eliminated the Intervenors pre-existing state Superior Court lawsuit.

## The Identity of the Intervenors

The Intervenors are fifteen property owners who own property immediately abutting or in close vicinity to the Town property on which the cellular tower is proposed. On March 19, 2019, the Intervenors filed a complaint in the Barnstable Superior Court challenging a zoning variance issued by the Town's Zoning Board of Appeals which authorized construction of a cellular tower on the Town property which was 116 feet higher than that allowed under the Town's Zoning

---

[1] The Intervenors are the plaintiffs in the Massachusetts Superior Court proceeding and are: Dennis Scannell, Dianne Scannell, Peter Michaelson and Lorraine Michaelson as trustees of the Michaelson Trust, Michael Ronhock, Teresa Ronhock, Robert Robello, Dawn Robello, Robert Nelson, Debra Nelson, Margo Cutter, Dana Robert, Lauren Robert, Christopher McDonald and Jennifer McDonald.

Bylaw. *See* Barnstable Superior Court Civil Docket No. 1972CV0130. A copy of the Complaint in that matter is attached as Exhibit One. The Plaintiff Blue Sky is a defendant in the Barnstable Superior Court proceeding.

**Factual and Procedural Background**

In May, 2017, the Town of Mashpee in a move to increase Town revenues issued a request for proposals to install a cellular tower on Town property adjacent to the Intervenors' lands. *See* Complaint (#1) at para. 12 and Agreement for Judgment (#12), at p. 2 (third recital or "whereas" clause). Blue Sky was the successful bidder. **No** study was performed prior to the request for proposals that determined that the Town property was the ideal location for a cellular tower.[2]

In May, 2018, Blue Sky applied to the Mashpee Planning Board for a special permit and was referred to the Cape Cod Commission, a regional land use agency, for review. *See* Complaint at paras. 79-81. Contrary to the assertions of Blue Sky in the Complaint and Agreement for Judgment, the Cape Cod Commission's consultant and the Commission, itself, made no findings relevant to the Telecommunications Act of 1996, ("Telecommunications Act"), but, rather, specifically stated that the Commission's standards differed from those of federal law. *See* Report of Isotrope Wireless to Cape Cod Commission, dated August 10, 2018 ("Isotrope Report" and copy attached

---

[2] The Complaint in this matter falsely asserts that "Verizon Wireless had unsuccessfully attempted to secure a site in the area of the Proposed Site." Complaint (#1) at para. 64. However, Verizon Wireless had a five year lease in 2013 that could be extended for 20 more years for a nearby property. *See* Document No. 1,229,499 recorded in the in the Barnstable Registry District of the Land Court (copy attached as Exhibit Two). In certain matters such an assertion might be excused, but, in this matter, Verizon Wireless was represented by the same attorneys (Duval and Klasnick) as Blue Sky in this matter and, therefore, it is inexcusable that the prior Verizon lease was not disclosed. *Compare* Complaint (#1) p. 21 (signed by Edward Duval of Duval and Klasnick) with Exhibit Two, p. 1 (lease recorded by Daniel Klasnick of Duval and Pastel).

as Exhibit Three), at p. 6 ("Note that the determination of a 'coverage or capacity problem' is not necessarily the same as a determination of a 'coverage gap' under federal law.")

Further, the Isotrope Report described the proposed location as unusual and, specifically with respect to Verizon's (tenant of Blue Sky) network, stated:

> The proposed site is on the southern edge of coverage from existing the Mashpee site about 1.5 miles to the north, Ordinarily, wireless carriers prefer to place new facilities in the middle of the area of poorest service. This would be about 3/4 mile south of the proposed site near the intersection of Hush Road and Great Oak Road.

Isotrope Report (Ex. 3), at p. 7.

Unsurprisingly, the location stated in the Isotrope Report is immediately adjacent to the location which Verizon had under lease from 2013 to 2018. *See* Exhibit Two, at p. 10 (showing the area near the intersection of Hush and Great Oak Roads). Similarly, the Isotrope Report notes that T-Mobile's (another tenant of Blue Sky) "dominant coverage needs are substantially to the south of the proposed site." *Id.* at p. 8. With respect to the Telecommunications Act, the Isotrope Report stated: "Assuming there is what courts would consider to be a gap in service, there would have to be alternatives for the applicant's tenants to the proposed tower." *Id.* at p. 9. Thus, while the Commission did approve the tower, the Commission did not make any findings relevant to the Telecommunications Act and its consultant's report was highly skeptical of the Town property having appropriate characteristics to be the sole appropriate site.

Upon remand to the Town, the Town determined that the Town Property was not within a wireless overlay district and a zoning variance was required.[3] As such, Blue Sky withdrew its request for a special permit so that it could first apply for a zoning variance.

On January 10, 2019, Blue Sky filed a petition with the Mashpee Zoning Board of Appeals requesting a dimensional variance for the construction of a tower which was at least 116 feet higher than that allowed under the Mashpee Zoning Bylaw. Ex. 1 (Superior Court Complaint) at p. 4, para. 12. On February 13, 2019, the ZBA voted unanimously to grant the variance to Blue Sky and the decision was filed with the Mashpee Town Clerk on February 27, 2019. Ex. 1, at p. 15. On March 19, 2019, the Intervenors filed an action in Barnstable Superior Court challenging the ZBA's grant of the variance to Blue Sky which remains pending. Ex. 1; *see* Ex. 1, p. 1 (time stamp of filing).[4]

On August 2, 2019, Blue Sky refiled its special permit application which was ultimately denied resulting in this proceeding. Complaint at pp. 13-16, paras. 112-136.

The Complaint in this matter was filed on November 13, 2019. The Complaint was served on the Town Manager on December 2, 2019 (#4, Return of Summons as to Town), but not served on the

---

[3] The history of that determination could give rise to multiple conspiracy theories. That is in 1998, the Mashpee Town Meeting amended its zoning bylaw so that the Town's property was excluded from the wireless overlay district. However, the Town did not properly codify the 1998 zoning amendment such that it appeared that the Town property remained in the overlay district. Only after significant public outcry and the public release of the Attorney General's approval of the 1998 zoning amendment, did the Town admit that the Town property where the cellular tower was proposed was not located in the wireless overlay district. *See also* Complaint (#1) at pp. 12, paras. 97-103.

[4] *See also* Complaint (#1) at p. 13, paras. 107-111.

Planning Board or its members until December 23, 2019. (#5-#10, Return of Summons as to Planning Board and each of its members). Notwithstanding the intervening holidays, the Town and Blue Sky filed an "Agreement for Judgment" including a proposed judgment only fifteen (15) days later on January 7, 2020. (#12).

On January 8, 2020, this Court signed the proposed judgment. (#13) ("Judgment"). And, on the following day (i.e., January 9, 2020), Counsel for BlueSky sent an email forwarding the "Agreement for Judgment" and the Judgment and, in the email, stated:[5]

> The Agreement for Judgment and Final Judgment states that in compliance with the Town of Mashpee Zoning Bylaws mandate for adherence to the TCA, a variance is not necessary and the Final Judgment shall operate to approve the tower at 150 feet as shown on the attached plans. This federal court decision renders the pending appeal in Superior Court moot.

Copy of email attached as Exhibit Five.

Contrary to the assertions in the email, the Final Judgment signed by the Court says absolutely nothing about "compliance with the Mashpee Zoning Bylaws" or that a "variance is not necessary." Such language is only found in the Plaintiff's Agreement for Judgment and is wholly absent from the Court's Judgment.

## Legal Argument

### A.   Standards for Motions to Intervene.

Motions to intervene are governed by Fed. R. Civ. P. 24. Motions to Intervene may be made as of right, or by permission of the court. *See* Fed. R. Civ. P. 24 (a) and (b). Whether the motion is made

---

[5] The short timing between service and filing of the Agreement for Judgment is unsurprising as the Town of Mashpee apparently was already working with Blue Sky on settlement before the lawsuit was even served on the Planning Board. Memorandum from Rodney Collins, Town Manager, to Planning Board, dated December 3, 2019 (Copy attached as Exhibit Four).

by right or by permission, the motion must be timely, such that the original parties' rights will not be prejudiced. *See*, Fed. R. Civ. P. 24(a) and (b). Motions to intervene by right must be permitted if the movant, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

### B. The Intervenors' Motion is Timely Even Though Filed After Entry of Judgment

In determining timeliness, no rigid formula exists to determine whether an application to intervene is timely. In fact, the determination of timeliness is contextual, and should not be used as a tool of retribution to punish the tardy, would-be intervenor. *See, Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir., 2005). The "timeliness requirement is often applied less strictly with respect to intervention as of right." *R & G Mortgage Corporation v. Federal Home Loan Mortgage Corporation*, 584 F.3d 1, 7 (2009). In conducting a timeliness inquiry, there are "no ironclad rules about just how celeritously in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge." *Id*. "The timeliness inquiry centers on how the putative intervenor has acted once he received actual or constructive notice of the impending threat." *Id*.

Courts normally consider four factors to inform the timeliness inquiry: "(i) the length of time that the punitive intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should the intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *R & G Mortgage Corp. v. Federal Home*

*Loan Mortgage Corp.*, 584 F.3d 1, 7 (2009). Each of the foregoing factors must be appraised in light of the posture of the case at the time the motion is made. Although "motions to intervene that will have the effect of re-opening settled cases are regarded with particular skepticism . . . . A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights are timely." *Id.* at 7-8. The touchstone in determining timeliness is "the status of the litigation at the time of the request for intervention[.]" *Id.* at 7.

The Intervenors satisfy all four of the timeliness considerations. The Intervenors have filed their motion within twenty one days after they learned that Blue Sky was claiming that the Judgement issued by this Court acted to render their Superior Court appeal of the variance moot. In this regard, it should be noted that the Complaint in this matter did not request that the Court take any action regarding the Barnstable Superior Court appeal and, therefore, Intervenors could not be on notice that the case would impact their pending action until the receipt of the email.[6]

The prejudice to existing parties by intervention is minimal. While post-judgment intervention is often denied as untimely due to prejudice to existing parties, "[a]s a general rule, prejudice to existing parties is less likely in a case where post-judgment intervention does not seek to disturb the core judgment, but merely to reconfigure an ancillary term." *Banco Popular v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir., 1992) (citations omitted). Here, the Intervenors do not seek to address the core issue of the litigation which was overturning of the Planning Board's denial of a special

---

[6] The closest statement in the "requests for relief" is a request that "the [Planning] Board and the Town of Mashpee [be required] to grant any and all necessary zoning approvals." Complaint (#1), at p. 21 (5th request for relief). Since the zoning variance had already been issued, this request had no bearing on it because it did not require Mashpee to perform any act that it had not previously performed.

permit, but, rather, only seek to address the ancillary issue of whether the Judgment entered by the federal court acted to eliminate the Intervenors ongoing challenge in Massachusetts Superior Court to the variance issued by the Mashpee Zoning Board of Appeals in February, 2019. It should be noted that the Intervenors would be "necessary parties" if this proceeding aimed to impact their rights[7] and it would have obvious to the District Court that the Intervenors were "necessary parties" if Blue Sky and the Town had expressly stated to the Court that this proceeding was intended to foreclose the Intervenors' Superior Court case.

As the United States Court of Appeals for the First Circuit has noted, intervention motions involving ancillary matters are not "rare" and often occur years after a judicially settlement or consent decree has been entered:

> It is also important to note that post-judgment intervention is not altogether rare. Numerous courts have allowed third parties to intervene in cases directly analogous to this one, many involving delays measured in years rather than weeks. *E.g., Wilson v. American Motors Corp,* 759 F.2d 1568 (11th Cir., 1985) (third party member permitted to intervene after judicially approved settlement in order to challenge a seal on court documents); *FDIC v. Ernst Ernst,* 677 F.2d 230 (2d Cir., 1982) (third party permitted to intervene and challenge a stipulated confidentiality order two years after a judicially approved settlement); *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir., 1964) (third party permitted to challenge a protective order three years after the underlying litigation had terminated), *cert. denied*, 379 U.S. 900, 85 S. Ct. 186, 13 L. Ed. 175 (1964); *Mokhiber v. Davis*, 537 A.2d 1100, 1104-06 (D.C., 1988) (third party permitted to intervene four years after a judicially-approved consent decree in order to challenge a protective order); *c.f. United Airlines v. McDonald*, 432 U.S. 385, 97 S. Ct. 2464, 53 L. Ed. 423 (1977)(permitting post-judgment intervention for purposes of appeal).

---

[7] More specifically, if this proceeding and the Judgment were intended to end the Superior Court lawsuit, the Intervenors are "necessary parties" because they have "an interest relating to the subject matter of the action and [are] so situated that disposing of the action in [their] absence may; (i) as a practical matter impair or impede [their] ability to protect the interest . . . ." Fed. R. Civ. P. 19(a)(1)(B). In other words, the Intervenors have an existing lawsuit in Superior Court regarding a variance granted by the ZBA. *See* G.L. ch. 40A, Sec. 17 (allowing persons "aggrieved" by a decision to grant a variance to appeal that decision to the Superior Court). The Intervenors' ability to prosecute that lawsuit will be impeded and essentially eliminated if the Judgment has the effect of ending the lawsuit.

*Public Citizen v. Liggett Group, Inc.*, 858 F. 2d 775, 785 (1st Cir., 1988)

In this matter, the Intervenors have moved to intervene solely because Blue Sky has asserted that the Judgment ends their Superior Court case. As such, prejudice to Blue Sky is essentially non-existent as the Intervenors solely desire that the District Court determine an issue that Blue Sky seeks to impose upon the Intervenors in the Superior Court action without any explicit action by the federal court on that issue.

The harm to the Intervenors if this motion is denied is significant. Over the years, the Intervenors sought to maintain their neighborhood as a residential area and have attended multiple hearings of Town boards regarding the proposed cellular tower. When the ZBA granted a variance, the Intervenors appealed that decision. If the Intervenors are not allowed to intervene and Blue Sky's interpretation of the Judgment is upheld, then Intervenors' ability to prosecute their appeal of the variance issued by the ZBA to Blue Sky will be eliminated. Furthermore, the Town has a vested interest in ensuring that the cellular tower is constructed on its land as it will obtain revenue from leasing the land to Blue Sky. As such, the Town appears to have collusively decided to end this lawsuit by a judgment solely in an attempt to derail the Superior Court. More specifically, the Town could have simply settled this proceeding under the authorities grated by their bylaws to allow construction. *See* Agreement for Judgment at p. 4 (third and fourth recital or "whereas" clauses). However, the Town and Blue Sky entered into an Agreement for Judgment apparently so that they could attempt to use the Judgment issued following it as judicial "seal of approval" for the purpose of attempting to end the Intervenor's Superior Court appeal of the zoning variance.

Finally, special circumstances exist for allowing intervention at this time. In this particular matter, the Town has a financial interest in the construction of the cellular tower. As such, it has never had a desire to defend the decision of its independent board nor submit evidence to contradict the claims of the Blue Sky and tenants regarding whether a "significant gap" in coverage exists.[8]

### C. The Disposition of this Matter Will Impair or Impede the Intervenors' Ability to Protect Their Interests

The Intervenors should be allowed to intervene as a matter of right as the instant litigation affords the Intervenors their only opportunity to protect their interests in the Planning Boards' decision and the Superior Court litigation as the Town has wholly abdicated its defense of the instant matter. *See NexTel Communications of the Mid Atlantic, Inc. v. Town of Hanson*, 311 F.Supp.2d 142, 161 (D.Mass. 2004) (cell tower matter allowing intervention on the basis that the town may not adequately represent abutters' interests given the potential for possible settlement with the Town). In order to intervene as a right under Rule 24(a)(2), "a perspective intervenor must meet four conditions: 1) a timely motion, 2) an interest relating to the property or transaction which is the subject of the action, 3) a risk that the action may impair the intervenors' ability to protect its interest, and 4) lack of adequate representation by existing parties." *Id*. at 150; *citing Travelers Indem. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).

---

[8] If necessary, the Intervenors would submit evidence not only on alternative sites, but, also, evidence that the Peninsula Council, Inc., which represents landowners in the majority of the area of the alleged coverage gap have obtained proposals within the last year for installing an outdoor distributed antenna system that would provide 5G wireless service by installing small antennas throughout the area and as alternative to the Blue Sky tower and fully eliminate any gap.

The timeliness of the Intervenors' motion has been previously addressed. The Massachusetts federal district court also has held, in the context of a cell tower zoning case, that the second and third elements (the interest relating to the property or transaction which is the subject of the action and a risk that the action may impair the Intervenors' ability to protect its interest), are established when a proposed intervenor is an abutter. *See, Id*. (an "abutter has an interest in preventing an expansion of nonconforming use on abutting property."). The Intervenors are abutters and/or live in close proximity to the Town property where the tower will be located. Ex. 1 (Complaint) at p. 2, para. 3. Further, the Intervenors have an existing lawsuit which Blue Sky claims has essentially been eliminated by the Judgment. Thus, the Intervenors' have an interest in the property/transaction which is the subject of action and that interest will be impaired by the Judgment.

With respect to the final element, the First Circuit adopted a three factor test in considering a motion to intervene as a right. The three factor test is, "1) are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; 2) is that present party capable and willing to make such arguments; and, 3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?" *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (I" Cir. 1992). An intervenor need only show that representation <u>may</u> be inadequate, not that it <u>is</u> inadequate. *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992). In *NexTel*, the Court found that "an uncompromising opposition to construction of any" cell tower may add the "necessary element to the proceedings which would not be covered by the parties in the suit." *NexTel*, *supra* at 152. The Court further

found that the Intervenors may establish inadequate representation based on the threat of the Town dropping opposition to the construction of the cell tower in exchange for consideration. *Id.* For these reasons, the First Circuit has suggested recent cases that abutting landowners should, as a general matter, be permitted to intervene in federal actions brought under the [Telecommunications Act]." *See, Id*. at 153; citing *Metheny v. Becker*, 352 F.3d 458, 462 (1st Cir. 2003) and *Brehmer v. Planning Board*, 238 F.3d 117, 119, note 2 and 122 (1st Cir. 2001).

Given that the Town owns the property where the cell tower will be built and has settled this proceeding, the Town cannot be said to represent the interests, nor is the Town capable and willing to make any arguments against the construction of the cell tower. Finally, given that Blue Sky has settled with the Town (who through its ZBA is also a defendant in the Superior Court proceeding) in a manner which allows it to take the position that the Judgment eliminates the Superior Court variance proceeding, the Intervenors provide a necessary element as to the effect of the Judgment which is "not be covered by the parties to the suit."

    **D.**    **Intervenors Should be Considered Defendants**

Fed. R. Civ. 24(c) requires that the Intervenors must provide a pleading which "sets out the claim or defense for which intervention is sought." Intervenors seek to be joined as Defendants and have attached a proposed answer as Exhibit Six.

**Conclusion**

The four elements necessary to allow intervention as of right under Rule 24(a) are present: Intervenors' motion is timely; the Intervenors have a clear and concrete interest relating to the subject matter of this case; the Intervenors are at risk that this action may impair their ability to protect their interests, and the Intervenors currently lack adequate representation by the existing parties. This Court should allow the Intervenors to intervene or, if it denies the Motion to Intervene, this Court should state that the Judgment has no impact on the Superior Court proceeding.

                                  Respectfully Submitted,

                                  /s/ Paul Revere, III
                                  Paul Revere, III
                                  (BBO #636200)
                                  Attorney for Intervenors
                                  Law Offices of Paul Revere, III
                                  226 River View Lane
                                  Centerville, Massachusetts 02632
                                  (508) 237-1620
                                  revereiii@aol.com

Dated: January 30, 2020

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                  /s/Paul Revere, III
                                  Paul Revere, III